COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


FALLS CHURCH CONSTRUCTION
 CORPORATION, ET AL.
                                              OPINION BY
v.         Record No. 0550-95-4        JUDGE LARRY G. ELDER
                                          DECEMBER 12, 1995
RAPHAEL VALLE


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Dawn E. Boyce (Trichilo, Bancroft, McGavin,
               Horvath & Judkins, P.C., on brief), for
               appellants.

               Jack T. Burgess (Jack T. Burgess & Associates,
               P.C., on brief), for appellee.


     Falls Church Construction Corporation, the statutory

employer, and West American Insurance Company, its insurer,

appeal the commission's award of benefits to Raphael Valle

(claimant) for a work-related injury by accident.  Falls Church

Construction contends:  (1) claimant's immediate employer was not

uninsured and therefore the immediate employer's insurer, the

Maryland Injured Workers' Insurance Fund, should have been added

as a party to the proceedings; (2) claimant did not establish an

injury by accident; (3) claimant did not adequately market his

residual work capacity; and (4) claimant obstructed medical

treatment.  Finding no error, we affirm the commission's

decision.

I.

FACTS

The commission awarded claimant benefits for an injury by accident arising out of and in the course of his employment with American Inner Wall, Inc., claimant's immediate employer. American Inner Wall is a subcontractor of Falls Church Construction. Claimant commenced work with American Inner Wall in 1987, performing duties as a carpenter and a foreman. American Inner Wall hired claimant in Maryland, and he initially worked only in that state. On June 23, 1993, the date of claimant's injury by accident, American Inner Wall possessed a workers' compensation policy issued by the Maryland Injured Workers' Insurance Fund (Maryland Fund), which American Inner Wall believed insured its employees who temporarily worked in other states. Falls Church Construction required American Inner Wall to maintain such a policy pursuant to the contractor/subcontractor agreement it reached with American Inner Wall.

On June 23, 1993, claimant performed carpentry duties on a four to five foot high scaffold at an elementary school in Herndon, Virginia. While screwing wire mesh into the ceiling, claimant attempted to prevent himself from falling off the scaffold by springing forward to grab a column. As he did so, he felt a snap in his back and a burning sensation. Claimant promptly reported the injury to his foreman and received

2

permission to seek medical treatment.  Claimant received emergency room treatment within twenty minutes at Access of Reston/Fairfax Hospital and later at Fairfax Hospital.  The examining physician diagnosed acute back strain and prescribed medication and rest for two days with restriction to light activities.

The following day, claimant returned to work medicated with an over-the-counter aspirin, and he presented the foreman with a disability slip detailing his work restrictions.  The foreman told claimant "just to lay back," yet claimant performed work duties for five and one-half hours.  A coworker testified that claimant performed regular duties without complaint or difficulty.  Witnesses observed claimant shooting basketball for approximately fifteen to twenty minutes during a work break.

On June 30, 1993, Dr. Denis O'Brien examined claimant and diagnosed degenerative disc disease at the L5-S1 disc with lumbar radiculopathy.  On August 4, 1993, Dr. O'Brien offered a diagnosis of a herniated disc at the L5-S1 disc and opined that the symptoms were directly related to claimant's work injury.

On January 20, 1994, claimant was released to light duty work status, but he continued to complain of pain.  Claimant applied for unemployment benefits in Maryland, which he received for twenty-six weeks.  Claimant supplied the Maryland Employment Commission with lists of job contacts he made, and he testified as to the jobs he applied for from March to August of 1994, the

month of the deputy commissioner's hearing.  Claimant worked as an announcer on a Spanish speaking radio station for three weeks in September and October 1993 and also delivered newspapers with his family.

Claimant's compensation claim, filed on July 26, 1993, alleged various degrees of work incapacity from June 24, 1993 to July 31, 1994, not counting certain periods during which he secured employment.  After Falls Church Construction and its insurer were added as defendants, but prior to the deputy commissioner's hearing, Falls Church Construction asserted that it was improper to proceed without American Inner Wall's insurer, the Maryland Fund.  The commission overruled Falls Church Construction's request to join the Maryland Fund as a party.

The deputy commissioner and the full commission found:  (1) claimant sustained an injury by accident on June 23, 1993, (2) he was entitled to benefits, (3) he adequately marketed his residual work capacity, (4) he did not obstruct medical treatment, and (5) American Inner Wall was uninsured for claimant's compensable injury.  On the issue of insurance, the commission noted that American Inner Wall did not demonstrate coverage by an insurance carrier authorized and licensed to do business in Virginia over which the commission could exercise jurisdiction, as required by Code § 65.2-801.  Therefore, Falls Church Construction was liable for claimant's injuries as his statutory employer.

II.

4

IMMEDIATE EMPLOYER'S INSURANCE

We hold the commission did not err in deciding that American Inner Wall was uninsured in Virginia and that Falls Church Construction was therefore liable as the statutory employer.  See Code § 65.2-302; Sites Constr. Co., Inc. v. Harbeson, 16 Va. App. 835, 434 S.E.2d 1 (1993)(stating employees of an uninsured sub-contractor may look to the general contractor/statutory employer for coverage).

Code § 65.2-801 dictates the various methods by which an employer must insure its employees for injuries covered by the Virginia Workers' Compensation Act.  Code § 65.2-801(A) states:

> Every employer subject to this title shall secure his liability thereunder by one of the following methods:
>
> 1.  Insuring and keeping insured his liability in an insurer authorized to transact the business of workers' compensation insurance in this Commonwealth;
>
> 2.  Receiving a certificate pursuant to § 65.2-808 from the Workers' Compensation Commission authorizing such employer to be an individual self-insurer; or
>
> 3.  Being a member in good standing of a group self-insurance association licensed by the State Corporation Commission.

Nothing in the record establishes that American Inner Wall met the requirements of subsections (A)(2) or (3), because American Inner Wall was neither self-insured nor a member of a group self-

insurance association.  Thus, American Inner Wall was obligated to meet the requirements of subsection (A)(1)--to insure "liability in an insurer authorized to transact the business of workers' compensation insurance" in Virginia.

American Inner Wall did not meet this requirement because, according to the commission's records, the Maryland Fund is not an insurer authorized to transact the business of workers' compensation insurance in Virginia.  The State Corporation Commission/Department of the Bureau of Insurance notified the commission that the Maryland Fund was not a licensed "carrier" included in the Bureau of Insurance's list of companies licensed to transact insurance business in Virginia.  See Code §§ 38.2-1024, 38.2-1027 (stating no insurer shall transact business in Virginia until it has obtained the appropriate license from the State Corporation Commission and has met other requirements concerning company organization).  Furthermore, the commission noted that the Bureau of Insurance said the Maryland fund is not a commercial insurance company, but rather a Maryland state agency which acts as an insurer of last resort for businesses operating in Maryland.  Compare Code § 65.2-1203 (setting forth the procedure by which the Virginia Uninsured Employer's Fund acts as an insurer for uninsured employers).

Falls Church Construction asserts that when an employer fails to comply with one of Code § 65.2-801's methods of securing liability, civil or criminal penalties are the appropriate

methods of redress.  See Code § 65.2–805 (assessing civil penalties); Code § 65.2-806 (assessing criminal penalties).  A close reading of Code §§ 65.2-805 and –806 reveals that the respective penalty provisions apply when an employer fails to comply with the record keeping requirements of Code § 65.2–804,[1] not the requirements of Code § 65.2–801.  We do not believe, nor does Falls Church Construction offer support for its contention, that penalties are also the appropriate method of redress for an employer that has failed to secure its liability under one of the three methods prescribed by Code § 65.2–801.

Falls Church Construction also attempts to support its position with three commission opinions issued twenty years ago, each of which involved an immediate employer and its insurance company denying insurance coverage.  Priest v. Harrison, 56 O.I.C. 257 (1975); Poston v. Evans, 56 O.I.C. 253 (1975); Johnson v. Hensil Farlow Constr. Co., Inc., 56 O.I.C. 188 (1975).  Not only are these decisions not binding on this Court, but none includes facts involving an insurer unauthorized to transact the business of workers' compensation insurance in Virginia.

Therefore, we cannot say the commission erred in determining that American Inner Wall was uninsured in Virginia for purposes

---

[1]  Code § 65.2–804, entitled "Evidence of compliance with title; notices of cancellation of insurance," states "[e]very employer subject to this title shall file with the . . . [c]ommission, in form prescribed by it, annually or as often as may be necessary, evidence of his compliance with the provisions of § 65.2–801 and all other relating thereto."

of the Virginia Workers' Compensation Act and that the statutory employer, Falls Church Construction, was liable for claimant's benefits.  Nevertheless, we emphasize that nothing in the commission's decision, or in this Court's decision, is meant to foreclose other avenues of redress Falls Church Construction may have in the Maryland courts or commission or other appropriate forums.[2]

### III.

### MERITS OF THE CLAIM

Falls Church Construction argues claimant did not suffer an injury arising out of and in the course of his employment.

On appellate review, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)(citation omitted).  To recover benefits, the claimant must establish by a preponderance of the evidence that he suffered an injury by accident "arising out of

---

[2]  We note that under Maryland workers' compensation law, an employee is entitled to compensation while working for an employer even where that employee was injured while working outside of Maryland "on a casual, incidental, or occasional basis if the employer regularly employs the individual within [Maryland]."  Md. Code Ann., Labor & Employment § 9-203 (1991); compare Virginia Code § 65.2-508.

and in the course of [his] employment," Code § 65.2-101, and "that the conditions of the workplace . . . caused the injury." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989). Unless we can say as a matter of law that claimant failed to meet his burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

After reviewing the record, we hold the commission did not err in finding that claimant sustained an injury by accident arising out of and in the course of work. Testimony revealed that claimant fell from a scaffold at the workplace as he was performing regular work duties. As he fell, claimant felt a snap in his back and a burning sensation. Claimant promptly reported his injury to his foreman, received permission to seek medical treatment, and received emergency room treatment within twenty minutes. The examining physician first diagnosed acute back strain and later a herniated disc. The medical records do not indicate any other possible cause for claimant's back injury, and there is no indication of prior back ailments.

IV.

RESIDUAL WORK CAPACITY

A partially disabled claimant has the burden of proving entitlement to benefits and that he made a reasonable effort to procure suitable work and to market his remaining work capacity.

9

Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 463-64, 359 S.E.2d 98, 100 (1987). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the party prevailing before the commission." National Linen Svc. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989). We hold that the commission did not err in determining claimant adequately marketed his residual work capacity.

On January 20, 1994, claimant was released to light duty work status. Claimant applied for unemployment benefits in Maryland, which he received for twenty-six weeks. Claimant supplied the Maryland Employment Commission with lists of job contacts he made, and he testified as to jobs applied for from March to August of 1994, the month of the deputy commissioner's hearing. Claimant worked as an announcer on a Spanish speaking radio station for three weeks in September and October 1993, earning eighty dollars per week, delivered newspapers with his family, and made attempts to gain computer skills to enhance his marketability. As the commission correctly recognized, claimant's efforts qualified as reasonable within the parameters set forth in National Linen Svc., 8 Va. App. at 272, 380 S.E.2d at 34.

V.

OBSTRUCTION OF MEDICAL TREATMENT

Under some circumstances, failure to follow a physician's

10

instructions may be unjustified and lead to a suspension of benefits. See generally Holland v. Virginia Bridge & Structures, Inc., 10 Va. App. 660, 662, 394 S.E.2d 867, 868 (1990)(holding employee who unjustifiably refuses reasonable and necessary medical treatment should be penalized); Code § 65.2-603(B) (stating employee may not unjustifiably refuse to accept medical or rehabilitative services). In this case, Falls Church Construction asserts that claimant failed to follow the examining physician's June 23, 1993 order to rest for two days, when claimant performed work duties and briefly played basketball the day after his injury. Falls Church Construction contends that these actions aggravated any underlying injury, adversely affected claimant's recovery, and prevented claimant from proving that his disability arose from a work-related cause.

We hold that although claimant failed to follow the attending physician's orders, Falls Church Construction presented no evidence that claimant's activities on June 24, 1993 adversely affected his recovery. Without such evidence, the commission properly determined that it could not find that claimant obstructed his medical treatment or that his condition arose from a non-work-related cause. See Shelton v. Ennis Business Forms, Inc., 1 Va. App. 53, 55, 334 S.E.2d 297, 299 (1985)(holding compensation is denied where it is just as probable that disability arose from non-work-related cause as a work related cause).

Accordingly, we affirm the commission's decision.

<u>Affirmed.</u>