COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Elder
Argued at Richmond, Virginia


MARY WASHINGTON HOSPITAL AND
 THE VIRGINIA INSURANCE RECIPROCAL
                                        MEMORANDUM OPINION* BY
v.    Record No. 1582-98-2               JUDGE LARRY G. ELDER
                                            MARCH 30, 1999
PATRICIA B. HOLLOWAY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Andrea L. Bailey (Crews & Hancock, P.L.C., on
              briefs), for appellants.

              Leila H. Kilgore (Benjamin M. Smith, Jr.;
              Kilgore & Smith, on brief), for appellee.


     Mary Washington Hospital and the Virginia Insurance

Reciprocal (hereinafter collectively employer) appeal from a

decision of the Virginia Workers' Compensation Commission

(commission) denying employer's application, based on an alleged

change in condition, to terminate compensation benefits payable

to Patricia B. Holloway (claimant).  Employer contends no

credible evidence supported the commission's decision that

employer failed to meet its burden of proving claimant's ongoing

disability was not causally related to her compensable injury of

September 7, 1994.  For the reasons that follow, we disagree and

affirm the ruling of the commission.

---

        *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

I.

FACTS

On September 7, 1994, while working as a nurse for employer, claimant sustained a compensable injury to her back while moving a patient from a stretcher to a bed. Claimant received treatment for her injury from Andre Eglevsky, Jr., an orthopedic surgeon from employer's panel of physicians. Dr. Eglevsky diagnosed her as having a "lumbo-sacral spine sprain," which he attributed to her lifting a patient on September 7, 1994. Employer accepted the claim as compensable, and the commission entered an award for various periods of disability. Claimant was temporarily and totally disabled from the date of the accident through December 12, 1994, and temporarily and partially disabled at varying rates thereafter.

Dr. Eglevsky treated claimant for her injury continuously from 1994 to 1997, during which time claimant reported ongoing chronic pain. Multiple MRIs revealed that claimant had two herniated disks, but neither Eglevsky nor a neurosurgeon to whom Eglevsky referred claimant believed that the disks were the source of her problems. Whether Eglevsky believed these herniations could have resulted from claimant's 1994 injury is unclear.

During the course of his treatment, Dr. Eglevsky noted that claimant had received a diagnosis of fibromyalgia prior to her 1994 injury, and he opined that her fibromyalgia played a greater role in her inability to return to full-duty employment than did her mechanical back problem. However, Eglevsky noted the

-

contrary opinion of a rheumatologist, who believed that claimant's mechanical back problem was responsible for her pain and that "the back problem is fanning the fibromyalgia."

In September 1996, Dr. Eglevsky opined that claimant was in a "[chronic] pain pattern, the pain emanating from fibromyalgia, chronic muscular pain, etc.," that "there [was] [no] simple solution to her problem," and that he did not "foresee any dramatic increase in her work capacity."

After examining claimant on October 9, 1997, Dr. Eglevsky reported that "it's not really clear what the source of [claimant's chronic pain problem] is; that is, it could be related to her chronic myofascial pain; it may be related to scar tissue in her back or just a chronic muscular problem."

By letter of November 6, 1997, however, less than a month later, and without further examining claimant, Dr. Eglevsky opined as follows:

> After treating [claimant] for several years and after evaluating her various tests, her various second opinions, and watching the course of her treatment, I have concluded that her present pain is not related to her accident of September 7, 1994.
> She is suffering from a chronic pain problem that stems from her fibromyalgia. I feel that this is a pre-existing condition and is not related to her industrial accident of September 7, 1994.

In an office note of November 11, 1997, Eglevsky noted that he based his opinion on the duration of claimant's problem, the lack of objective findings, the fact that no physician who had examined her felt she had a surgical lesion, and the fact that all attempts at treatment had failed.

-

By letter of November 25, 1997, employer moved to terminate claimant's benefits based on Dr. Eglevsky's November 6, 1997 report, that claimant's ongoing disability was not causally related to her 1994 injury.

In opposing employer's change-in-condition application, claimant presented the medical records of Dale Pcsolyar, a neurologist whom claimant apparently saw on referral from her personal internist. On November 13, 1997, Dr. Pcsolyar noted that claimant's pain could be "strictly myofascial pain, may be piriformis syndrome." He also said he could not "rule out sacroiliac joint pain referral, facet joint pain referral [or] . . . internal disk disruption" but that he did not think it was neuropathic in origin. Finally, he said, "[g]iven her widespread musculoskeletal pain, [he] would like to look for . . . causes other than fibromyalgia." Dr. Pcsolyar reviewed claimant's most recent MRI, and on December 11, 1997, he recommended a "Somatosensory Evoked Potential" or "SSEP to rule out radiculopathy in which case this would of course implicate the degenerated disk disease affecting nerve roots causing her pain syndrome." He noted that "if the SSEP is abnormal, then only nerve root impingement either through the piriformis or from the disk would account for such an abnormality." The results from the "left sural SSEP" were abnormal, which Pcsolyar said "could be indicative of an abnormality between the point of stimulation to the S1 lumbar nerve root and could be seen in an S1 radiculopathy on the left."

-

ANALYSIS

"In an application for review of an award on the ground of a change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence."  Rossello v. K-Mart Corp., 15 Va. App. 333, 335, 423 S.E.2d 214, 216 (1992) (citation omitted).  Factual findings made by the commission in reviewing the employer's change-in-condition application are "conclusive and binding on the appellate court if based on credible evidence."  Jules Hairstylists, Inc. v. Galanes, 1 Va. App. 64, 68, 334 S.E.2d 592, 595 (1985).  In determining whether credible evidence exists, we view the evidence in the light most favorable to the prevailing party. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  This Court does not "'retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'"  Falls Church Constr. Corp. v. Valle, 21 Va. App. 351, 359, 464 S.E.2d 517, 522 (1995) (citation omitted).  Although the opinion of the treating physician is entitled to great weight, see Pilot Freight Carriers v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986), "[m]edical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991).

Here, the commission found that employer failed to prove claimant's continuing disability was not related to her

industrial injury. Implicit in the commission's decision is a finding that Dr. Eglevsky's November 6, 1997 opinion was not credible. The commission noted that, as late as October 9, 1997, Dr. Eglevsky opined that the source of claimant's ongoing pain was unclear and that "it could be related to the chronic myofascial pain, scar tissue in her back or [chronic] muscular problems." On November 6, 1997, however, less than one month later, and in the absence of an additional medical examination, Eglevsky was certain that claimant's ongoing chronic pain problems resulted from a single source, her pre-existing fibromyalgia or "chronic myofascial pain," and were unrelated to her compensable injury of September 7, 1994. In implicitly rejecting this opinion, the commission noted that "[t]he record contain[ed] no medical report between [Dr. Eglevsky's October 9, 1997 office note] and the doctor's November 6, 1997, letter" which would support his change in opinion. Under the commission's authority to assess the credibility of the witnesses and determine what weight to give medical evidence, it was free to reject Dr. Eglevsky's opinion as to causation. Once it rejected that opinion, no evidence in the record proved that claimant's ongoing disability was not causally related to her compensable injury.

Employer contends that the fact that Dr. Eglevsky mentioned more than one possible source of claimant's ongoing chronic pain in his office note of October 9, 1997, does not mandate the conclusion that claimant's ongoing disability is causally related to her compensable injury. Although this assertion is true, it

-

does not take into account the fact that employer bore the burden of proving, on its change-in-condition application, that claimant's ongoing pain and related disability are <u>not</u> causally related to her compensable injury. Therefore, considering only Dr. Eglevsky's medical records and opinions, the commission was free to reject his most recent opinion on the issue of causation as not credible.

Here, the commission also relied upon the reports of Dr. Pcsolyar, a neurologist, and the absence of any reports from Dr. Miller, a physician who had treated claimant for her fibromyalgia in the past. Dr. Pcsolyar's records from November 1997 indicated several possible causes for claimant's ongoing pain, including "strictly myofascial pain," "piriformis syndrome," "sacroiliac joint pain referral, facet joint pain referral [or] . . . internal disk disruption." Therefore, unlike Dr. Eglevsky, Dr. Pcsolyar was unable to conclude that claimant's ongoing pain was caused solely by her pre-existing fibromyalgia. Furthermore, Dr. Pcsolyar performed additional testing, a "[s]omatosensory [e]voked [p]otential test" or "SSEP." His records indicated that the results from the "left sural SSEP" were abnormal and that "only nerve root impingement either through the piriformis or from the disk would account for such an abnormality." Therefore, Dr. Pcsolyar's testing resulted in objective findings which implicated sources for claimant's ongoing pain other than, or in addition to, claimant's fibromyalgia, whereas Dr. Eglevsky had noted a lack of objective findings and concluded that claimant's ongoing chronic pain stemmed solely from her fibromyalgia.

-

"Questions raised by conflicting medical opinions must be decided by the commission." Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989). Although Dr. Pcsolyar rendered no opinion as to the causal relationship between the nerve root impingement "either through the piriformis or from the disk" and claimant's compensable injury, Dr. Eglevsky's records and November 6, 1997 letter provide no indication that he considered these possible sources of claimant's pain in rendering his opinion on causation. Therefore, Dr. Pcsolyar's opinions provided a further basis for the commission's rejection of Dr. Eglevsky's November 6, 1997 opinion on causation.

For these reasons, we hold that credible evidence supported the commission's denial of employer's change-in-condition application seeking termination of claimant's benefits. Therefore, we affirm the commission's decision.

Affirmed.

-