COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Ortiz and Lorish
Argued by videoconference

ABACUS REMODELING AND CONSTRUCTION AND
 BUILDERS MUTUAL INSURANCE COMPANY

                                              MEMORANDUM OPINION[*] BY
v.       Record No. 0010-22-1                 JUDGE DANIEL E. ORTIZ
                                              SEPTEMBER 13, 2022
JOSEPH FOGEL


                    FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Tenley Carroll Seli (Lynch Seli, P.C., on briefs), for appellants.

        Philip J. Geib (Alexander H. Bell; Philip J. Geib, P.C., on brief), for
        appellee.

        A lapse in time between a work accident and a claimant's complaint about an injury does

not *per se* negate affirmative evidence of a mechanical or structural change to the affected body

part caused by the work accident. Abacus Remodeling and Construction and Builders Mutual

Insurance Company ("Abacus") appeal a decision of the Workers' Compensation Commission

awarding claimant Joseph Fogel temporary total disability benefits and lifetime medical benefits

for injuries to his neck, left shoulder, and left arm stemming from a work accident. Abacus

argues that the Commission erred in concluding that (1) Fogel sustained compensable injuries to

these body parts in the work accident and (2) Fogel was disabled and entitled to ongoing

disability benefits because of the work accident. We find that the Commission did not err in

determining that Fogel suffered compensable injuries to his neck, left shoulder, and left arm in

the work accident. However, we find that there was insufficient evidence to support an award of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

disability benefits beyond May 2, 2020. Accordingly, we affirm in part, reverse in part, and remand the Commission's decision for further actions consistent with this opinion.

BACKGROUND

On December 8, 2018, Joseph Fogel fell from a ladder while working for Abacus (the "work accident"). Subsequently, Fogel *pro se* filed a workers' compensation claim. Fogel sought a lifetime medical award for rib and lumbar vertebrae fractures, and temporary total disability from December 16, 2018, to the present. After investigating the claim, Abacus denied it, citing Fogel's safety violations. After hiring an attorney, Fogel twice amended his claim to include "fractures to his lumbar vertebra, a moderate left sided pleural effusion with a component of hemothorax, and a hematoma," and sought temporary total disability from December 8, 2018 awards of indemnity, and lifetime medical awards for treatment related to the work accident.

The deputy commissioner conducted five evidentiary hearings that took place over eighteen months—from July 2019 to January 2021. During these hearings, the deputy commissioner heard witnesses' testimony and admitted medical records and other documentary evidence into the record. The following evidence, relevant to this appeal, was produced.

Fogel worked for Abacus, a contractor in residential home construction and remodeling, for around eight months before the work accident. On the day of the work accident, Fogel arrived at his job site around 9:00 a.m. He worked with three other coworkers on a house that day. The work accident occurred around two hours into Fogel's workday when Fogel used a ladder he found in the garage to climb up to an attic access door in the garage to remove a hinge from the door. When Fogel climbed the ladder with his screw gun in hand, the ladder slid and Fogel fell to the concrete garage floor. Fogel testified that the ladder slid out from under him when he was "three or four feet, maybe five, [feet]" off the ground. He stated that he fell on his

left side buttocks and left side ribcage.  When Fogel's coworkers offered to call an ambulance, Fogel refused because he was worried about the cost and did not have health insurance.  Shortly after the work accident, Fogel left the job site and went home.

Once home, Fogel iced his left side.  The next day, Fogel's wife sent Fogel's supervisor a text saying that Fogel would not be at work for a couple of days because of the work accident.  She also sent four photographs of Fogel's injuries, showing significant bruising on Fogel's left side and buttocks.  Fogel's wife testified that Fogel "was hurting," "very, very sore," "couldn't move," and was "holding his ribs" after the work accident.

Fogel first sought medical treatment on December 19, 2018, at Sentara Princess Anne Hospital Emergency Department.[1]  Fogel recounted the work accident and reported left-sided chest and abdominal pain along with trouble breathing.  Reviewing a CT scan of Fogel's chest, a doctor diagnosed Fogel with left rib fractures from ribs three through ten, moderate pleural effusion with a component of hemothorax, left-sided transverse process fractures at L1 through L4, and an intramuscular hematoma in the left gluteus.  Fogel was then transferred to Sentara Norfolk General Hospital for trauma evaluation.  While there, he underwent a thoracostomy tube procedure and received pain medication for moderate to severe pain.  On December 22, 2018, Fogel was discharged, prescribed pain medications, and told to expect pain from the broken ribs for twelve to sixteen weeks.  No hospital records from this initial medical care documented injuries to Fogel's neck, left shoulder, and left arm, but they did note generalized pain and bruising on Fogel's left side.

Fogel followed up with a nurse practitioner on February 13, 2019.  He stated he was in too much pain to return to work, requested pain medication, and expressed concern over his

---

[1] Fogel's wife testified that Fogel did not want to go to the hospital at first because he was worried about the cost.

ability to pay for medical treatment.  While Fogel complained about back pain, he did not complain about neck, left shoulder, or left arm pain.  The nurse practitioner told him he should have been able to return to work from a rib fracture standpoint and referred him to physical therapy for back pain.  She told Fogel he could return to work "based on how he feels."

Fogel underwent a physical therapy evaluation in April 2019.  His neck range of motion was within normal limits, and his shoulder range of motion was within normal limits with pain at the end-range elevation.  His thoracic range of motion was "80% rotation with pain."[2]  His shoulder strength was a "4+/5," and a treatment goal was to return shoulder strength to "5/5."  Fogel attended a couple of physical therapy sessions in April but reported continued pain and limitations.

On June 5, 2019, Fogel consulted orthopedic Dr. Vincent and complained of low back and neck pain since the work accident.  Dr. Vincent noted "[t]he pain is worst [sic] in his neck and radiation in to left shoulder causing problems with [range of motion]."  Fogel stated physical therapy did not help with his symptoms.  Dr. Vincent reported Fogel only had "60% of normal cervical [range of motion]."[3]  He diagnosed Fogel with lumbar and cervical radiculopathy, ordered cervical and lumbar spine MRIs, and excused Fogel from work.[4]

After reviewing the MRIs, Dr. Vincent documented Fogel's cervical, thoracic, and lumbar radiculopathy, herniation of a cervical intervertebral disc with radiculopathy, spinal

---

[2] The term thoracic refers to the "upper part of the trunk between the neck and the abdomen; formed by the 12 thoracic vertebrae, the 12 pairs of ribs, the sternum, and the muscles and fasciae attached to these."  *Thorax*, *Stedman's Medical Dictionary* (2014).

[3] Cervical means relating to the neck.  *Cervical*, *Stedman's, supra*.

[4] Radiculopathy is a "[d]isorder of the spinal nerve roots."  *Radiculopathy*, *Stedman's, supra*.

stenosis of his lumbar region, and cervical spinal stenosis.[5]  Dr. Vincent then ordered a thoracic MRI and kept Fogel on no work duty status.[6]  In November 2019, Dr. Vincent referred Fogel to physical therapy and kept Fogel on no work duty status.  Dr. Vincent noted that "some of [Fogel's] parascapular pain" may be coming from his cervical stenosis.[7]

After Fogel finished physical therapy, Fogel last saw Dr. Vincent on April 2, 2020, due to his continued pain.  At this visit, Dr. Vincent documented Fogel's cervical spinal stenosis, spinal stenosis of his lumbar region, closed fracture of multiple ribs of his left side with routine healing, cervical, thoracic, and lumbar radiculopathy, herniation of a cervical intervertebral disc with radiculopathy, and thoracic disc herniation ("April 2, 2020 report").  Dr. Vincent referred Fogel to pain management for evaluation as he might "benefit from injections," and noted Fogel may want to see a thoracic surgeon "[i]f he continues to have pain."  Dr. Vincent's April 2, 2020 report continued Fogel's no work duty status, stating, "These limitations should continue until the patient is re-assessed at his next appointment in one month."

The parties stipulated that Fogel was an employee on December 8, 2018, fell off a ladder on that date, and suffered closed fractures of L1-L4, fractures of left ribs three through ten, a left hemothorax, and a gluteal hematoma (the "stipulated injuries").  They also stipulated that Fogel was disabled from December 13, 2018, through February 25, 2019.[8]  However, presenting its

---

[5] Spinal stenosis is a narrowing of the spaces within the spine.  *Stenosis*, *Stedman's, supra*.

[6] The MRI showed small disc protrusions at T11-12 that did not affect the spinal cord but was otherwise normal.

[7] Parascapular means the region near the shoulder blade.  *Para-*, *Stedman's, supra*; *Scapular region*, *id.*; *Scapula*, *id.*

[8] The parties stipulated that Fogel was not entitled to wage loss benefits from February 25, 2019, through June 4, 2019, because he was released to work in some capacity during this time.

own witness testimony, Abacus denied responsibility for the injuries Fogel sustained in the work accident.[9]

Fogel testified at the July 2019 and September 2019 hearings about the work accident, his medical treatment, and his financial difficulties related to his claim. Fogel's June 3, 2019 deposition was also admitted into evidence. In his deposition, Fogel talked about how the work accident caused him intense lower back pain, left shoulder pain, and loss of flexibility in his left arm.

After the last evidentiary hearing in January 2021, the deputy commissioner ordered that the parties file position statements by April 26, 2021, and the record remained open until that date. Yet Fogel did not submit any updated medical records, or any evidence or testimony dated after the April 2, 2020 report.

In May 2021, the deputy commissioner issued his opinion finding that Fogel suffered a compensable injury by accident.[10] Beyond the stipulated injuries, the deputy commissioner held that Fogel also injured his neck, left shoulder, and left arm in the work accident, based on Fogel's testimony, Fogel's wife's testimony, and the medical records. The deputy commissioner awarded Fogel compensation for wage loss from December 9, 2018, through February 24, 2019, and from June 5, 2019, onward, due to his inability to work because of his temporary total disability. He also awarded Fogel lifetime medical benefits under Code § 65.2-603 for injuries to his neck, ribs, back, left shoulder, left arm, and left leg.

Abacus requested review of the opinion by the full Commission. In December 2021, the full Commission issued its review opinion. The Commission determined that the deputy

---

[9] Abacus argued Fogel's injuries resulted from "intoxication" or his "willful breach of any reasonable rule or regulation adopted by Abacus."

[10] The deputy commissioner found that Abacus failed to prove Fogel's claim was barred by Fogel's willful misconduct.

commissioner did not err in finding that Abacus did not meet its burden in showing willful misconduct and awarding Fogel periods of temporary total disability and lifetime medical benefits for his injuries.  The Commission stated,

> The evidence preponderates that the claimant sustained injuries to his neck, left arm and left shoulder due to the accident.  The photograph of his left arm sent on December 9, 2018 (Defs.' Ex. 2.) appears to show a bruise on his left arm.  The physical therapy evaluation in April 2019 showed reduced range of motion and strength of the left shoulder.  Dr. Vincent's June 5, 2019 examination noted neck pain since the December 8, 2018 fall.  The thoracic MRI showed a disc herniation which Dr. Vincent believed to be responsible for some of the claimant's ongoing pain.

The Commission inferred Fogel's ongoing disability, even absent a recent medical report, given Fogel's severe injuries and difficulty paying for medical treatment when Abacus denied his claim and he did not have health insurance.

Commissioner Rapaport dissented in part.  He disagreed that Fogel proved his ongoing disability when Fogel was last seen by Dr. Vincent on April 2, 2020, when Dr. Vincent stated Fogel's limitations "should continue until [he] is re-assessed at his next appointment in one month."  Because Fogel produced no further medical evidence of ongoing disability after the April 2, 2020 report, and the claimant had the burden of proving ongoing disability, Commissioner Rapaport believed Fogel only proved he was disabled through May 2, 2020.[11]

Abacus now appeals to this Court.

## ANALYSIS

On appeal, Abacus argues that the Commission erred by "inferring" injuries to Fogel's neck, left shoulder, and left arm based on its finding that Fogel fell and suffered injuries to other body parts.  It also argues that the Commission erred in finding that Fogel suffered from an

---

[11] Further, Commissioner Rapaport was "not persuaded that, as of April 2, 2020, the claimant's injuries were sufficiently severe to justify entitlement to ongoing disability without any further treatment or opinion rendered by a physician."

ongoing disability beyond May 2, 2020, when the latest medical evidence that Fogel submitted was the April 2, 2020 report. Abacus asks that this Court limit Fogel's compensable injuries to the stipulated injuries and terminate Fogel's ongoing disability benefits from May 2, 2020, onward.

## I. Standard of Review

To recover benefits under the Workers' Compensation Act, a claimant must prove, by a preponderance of the evidence, "(1) an 'injury by accident or occupational disease, (2) arising out of, and (3) in the course of, the employment.'" *City of Charlottesville v. Sclafani*, 300 Va. 212, 221 (2021); *Morris v. Morris*, 238 Va. 578, 584 (1989); Code § 65.2-101. On appellate review of a Workers' Compensation Commission decision, this Court views the evidence in the light most favorable to the prevailing party below. *Falls Church Const. Corp. v. Valle*, 21 Va. App. 351, 359 (1995). Further, "we are bound by the [C]ommission's factual findings supported by credible evidence, despite the fact that there may be evidence to support a contrary finding." *Hoffman v. Carter*, 50 Va. App. 199, 209 (2007). But "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

Whether a claimant suffered an injury by accident is a mixed question of law and fact. *Riverside Reg'l Jail Auth. v. Dugger*, 68 Va. App. 32, 37 (2017). "The Commission's factual findings bind us as long as credible evidence supports them. But 'whether those facts prove the claimant suffered an injury by accident is a question of law.'" *Id.* (internal citation omitted) (quoting *Goodyear Tire & Rubber Co. v. Harris*, 35 Va. App. 162, 168 (2001)). In determining whether credible evidence supports the Commission's decisions, "the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the

credibility of the witnesses." *Valle*, 21 Va. App. at 359 (quoting *Wagner Enters. v. Brooks*, 12 Va. App. 890, 894 (1991)). Additionally, factual questions in doubt should be resolved in favor of the claimant. *Ellis v. Commonwealth*, 182 Va. 293, 304 (1944).

II. The Commission did not err in determining that Fogel suffered compensable injuries to his neck, left shoulder, and left arm in the work accident.

The medical evidence and witness testimony produced at the hearings supported the Commission's determination that Fogel suffered mechanical or structural changes to his neck, left shoulder, and left arm caused by the work accident.

A. The evidence supported a finding of mechanical or structural change to Fogel's neck, left shoulder, and left arm.[12]

To prove an injury by accident under the Act, a claimant must prove, by a preponderance of evidence, "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and the bodily change." *Hoffman*, 50 Va. App. at 212 (quoting *Chesterfield Cnty. v. Dunn*, 9 Va. App. 475, 476 (1990)); *Pro-Football, Inc. v. Uhlenhake*, 37 Va. App. 407, 418 (2002). Under the Act, pain or disability alone is not an injury without "a sudden obvious mechanical or structural change in the body." *Snead v. Harbaugh*, 241 Va. 524, 527 (1991). "The 'structural or mechanical change' *is* the injury, when it 'produces harm or pain or a lessened facility of the natural use of any bodily activity or capability.'" *Alexandria City Pub. Sch. v. Handel*, 299 Va. 191, 197 (2020) (quoting *Snead*, 241 Va. at 528). Therefore, when a claimant alleges injury to multiple body parts, he must prove mechanical or structural change in

---

[12] Fogel argues that Abacus is barred from arguing that Fogel did not suffer mechanical or structural changes to his neck, left shoulder, and left arm because it first made this argument on appeal. Yet Abacus explicitly made this argument in its amended request for review below. Additionally, it implicitly made this argument by arguing Fogel did not injure these body parts, within the definition of the Act, in its position statement and initial request for review. Abacus is therefore not barred from making this argument on appeal, and we address this argument on its merits.

every body part injured for each to constitute a compensable injury. *Id.* ("[W]ithout such a change in a body part, there is no injury to it.").

Without abridging the requirement that a mechanical or structural change occur, a claimant need not realize his specific injury at the time of his initial report. *See Seven-Up Bottling Co. v. Moseley*, 230 Va. 245, 250 (1985) (holding that an obvious sudden mechanical or structural change occurred when the claimant's disc rupture was only diagnosed weeks after the accident). Additionally, the Commission has held that "lapse of time between [an] injury and the onset of [a] claimant's . . . pain" does not mean a claimant did not suffer a mechanical or structural change. *Akisi v. Hartwood Found. Inc.*, VWC No. 175-75-32, slip op. at 4 (Va. Workers Comp. Comm'n July 18, 1996) (holding that the lapse of time between an accident and pain, as well as the absence of an injury in an initial medical report, are not necessarily fatal to a claim). Accordingly, the failure to identify a specific mechanical or structural change in initial medical reports is not fatal to a claim. *See Seven-Up Bottling Co.*, 230 Va. at 250; *see also Akisi*, VWC No. 175-75-32, slip op. at 4.

Abacus concedes that Fogel suffered a compensable work accident but argues that Fogel did not suffer obvious sudden mechanical or structural changes in his neck, left shoulder, and left arm when Fogel's symptoms affecting these body parts did not materialize until six months after the work accident. It is true that Fogel did not explicitly report pain in any of these body parts until his June 5, 2019 visit with Dr. Vincent. However, under *Seven-Up Bottling Co. v. Moseley*, the lapse in time between the work accident and Fogel's pain or report of pain in his neck, left shoulder, and left arm does not *per se* negate affirmative evidence of mechanical or structural changes to these body parts.

And the record here contains such affirmative evidence. For example, Fogel's physical therapist documented his left shoulder pain with end-range elevation and reduced shoulder

- 10 -

strength at his initial physical therapy evaluation in April 2019. The physical therapist determined Fogel's shoulder strength was "4+/5," and one of Fogel's physical therapy goals was to "have gross shoulder strength of 5/5."

Additionally, Dr. Vincent noted that Fogel only had 60% of normal cervical range of motion at Fogel's June 2019 appointment. At this time, Fogel told Dr. Vincent that his neck pain radiated into his left shoulder and caused problems with his range of motion. From this time through April 2020, Dr. Vincent diagnosed Fogel with cervical, thoracic, and lumbar radiculopathy, herniation of a cervical intervertebral disc with radiculopathy, thoracic disc herniation, and lumbar and cervical spinal stenosis, along with multiple rib fractures undergoing "routine healing." After reviewing the MRIs that revealed these various diagnoses, Dr. Vincent noted that Fogel's parascapular pain was likely related to these injuries.

In his deposition, Fogel corroborated these medical findings and elaborated on the pain in his neck and arm, loss of flexibility in his arm, and injury to his left arm and shoulder.[13]

This affirmative evidence of Fogel's reduced flexibility, strength, and range of motion in his left shoulder and arm, as well as various cervical injuries, supports the Commission's conclusion that Fogel suffered mechanical or structural changes to these body parts.[14] These specific changes to Fogel's neck, left shoulder, and left arm, are beyond pain and documented by medical evidence that the Commission found credible. Even though Fogel did not feel or report

---

[13] To illustrate the area in which he felt pain in his left shoulder and arm, Fogel gestured to the area between his shoulder and elbow.

[14] The Commission also cited a photograph of Fogel's arm which "appears to show a bruise on his left arm" as evidence of an injury to Fogel's left arm. While the quality of the photo is too poor for this Court to determine whether it supports this finding, the record contains other evidence that Fogel suffered mechanical or structural changes to his left shoulder and arm, particularly his reduced range of motion, strength, and flexibility. Accordingly, even without considering the photo, we determine that the Commission did not err in finding Fogel injured his left arm.

pain in these body parts until six months after the work accident, this lapse in time does not *per se* negate the affirmative evidence of mechanical or structural changes.

Abacus argues that the early medical records are not silent on these body parts, later reported as injured, but revealed no injuries to the neck, left shoulder, and left arm. However, our standard of review resolves this argument. Despite evidence in the record that may support contrary findings, we must affirm the Commission's findings when the record contains credible evidence showing mechanical or structural changes to Fogel's neck, left shoulder, and left arm. While Abacus argues that the six-month lapse in time between the work accident and Fogel's symptoms is too long to support a compensable injury, the case law sets no such time limit within which claimants must recognize or report injuries.[15] Instead, the claimant must simply prove that the mechanical or structural changes, whenever recognized, are causally related to the work accident. As discussed below, Fogel also met this burden.

B. The evidence supported a finding that these injuries were causally related to the work accident.

Abacus argues that the Commission erred because even if Fogel showed mechanical or structural changes to his neck, left shoulder, and left arm, he did not sufficiently link these injuries to the work accident. But because the record contains medical records and witness testimony supporting the Commission's finding that the injuries were causally related to the work accident, the Commission did not err.

---

[15] While the early medical records do not document pain or injuries associated with Fogel's neck, left shoulder, and left arm, they do note Fogel's "generalized" pain on the left side of his body and bruising. During Fogel's initial hospital stay, he was diagnosed with rib fractures, left transverse process fractures with a hemothorax, and a gluteal hematoma. He was prescribed pain medication. Fogel stated he did not realize the injury to his arm at first because his ribs and back hurt so badly. Accordingly, it would be reasonable for a factfinder to conclude Fogel did not recognize his secondary injuries until a later date when he was increasingly mobile and undergoing routine healing of his rib fractures.

The determination of whether a work accident caused a medical condition is a factual finding that we defer to on appeal. *Amelia Sand Co. v. Ellyson*, 43 Va. App. 406, 408 (2004).

"[I]t is not necessary in establishing causation that the pain or other physical manifestation of injury be contemporaneous with the incident in employment to prove that the injury arose out of the employment." *Morris v. Morris*, 4 Va. App. 193, 200 (1987), *rev'd on other grounds*, 238 Va. 578 (1989). Further, the Commission may rely on the claimant's credible testimony in determining causation. *Hoffman*, 50 Va. App. at 214; *see also Akisi*, VWC No. 175-75-32, slip op. at 4 (relying on the claimant's testimony about a work accident that affected her left side in finding a later identified left hip injury was caused by the work accident).

While Fogel did not report injuries to his neck, left shoulder, and left arm until June 5, 2019, Dr. Vincent attributed these injuries to the work accident that injured Fogel's left side. While Dr. Vincent's notes about the work accident were based on Fogel's self-reporting, the Commission may rely on a claimant's narrative in determining causation under *Hoffman v. Carter*. Fogel also stated that these injuries stemmed from the work accident in his deposition.[16] Additionally, the record does not contain any medical opinion that suggests that these injuries are attributed to anything other than the work accident, and the injuries are consistent with Fogel's stipulated injuries and testimony about falling on his left side.

Because the evidence supported the Commission's determination that Fogel suffered mechanical or structural changes to his neck, left shoulder, and left arm that are causally related to the work accident, the Commission did not err.

---

[16] However, on cross-examination during one of the hearings, Fogel stated he did not injure his neck, left shoulder, and left arm in the work accident. Despite this evidence that may support a contrary finding, the record as a whole contains sufficient evidence supporting the Commission's finding that these injuries were causally related to the work accident.

III. The evidence did not support the Commission's finding of Fogel's ongoing disability beyond May 2, 2020.

Abacus argues that Fogel did not prove his disability beyond May 2, 2020 and that the Commission "impermissibly inferred ongoing disability" when it awarded temporary total disability benefits beyond this date. Alternatively, it argues that even if Fogel had an ongoing disability, the disability was not causally related to the work accident.[17] We agree with Abacus that the Commission could not have inferred Fogel's disability beyond May 2, 2020, from Fogel's injuries and the April 2, 2020 report alone.

Whether a claimant has met his burden in establishing a continuing disability is a question of fact. *Hoffman*, 50 Va. App. at 216. Therefore, we must uphold the Commission's finding of disability if supported by credible evidence. *Id.* at 209.

A claimant "bears the burden of proving his disability and the periods of that disability" by a preponderance of the evidence. *Id.* at 216; *Paramont Coal Co. Virginia, LLC v. McCoy*, 69 Va. App. 343, 349 (2018). There is no presumption that once a disability is established, a claimant remains disabled in perpetuity. *Hoffman*, 50 Va. App. at 216. The Commission typically defers to medical records in determining ongoing disability. *See Bethea v. Criterion Corp.*, VWC No. 179-22-94, slip. op. at 5 (Va. Workers Comp. Comm'n May 26, 1998); *Hungerford Mech. Corp. v. Hobson*, 11 Va. App. 675, 677 (1991) ("Medical evidence is not necessarily conclusive but is subject to the [C]ommission's consideration and weighing.").

Yet a claimant need not present a recent medical report declaring him unable to work, or recent medical records showing the claimant pursued subsequent treatment, to prove ongoing disability. *See Smith v. Dominion Tech. Sol.*, No. 0475-14-3, slip op. at 7 (Va. Ct. App. Jan. 27,

---

[17] Because we determined that Fogel's neck, left shoulder, and left arm injuries are causally related to the work accident, and Fogel's evidence of ongoing disability relates to these injuries, this argument fails.

- 14 -

2015). Instead, "the recency of such a report is only one factor to be considered, together with other credible, substantive evidence, including the claimant's testimony, in determining whether a claimant proved his disability and the periods of that disability." *Id.* at 6-7 (finding that the claimant proved ongoing disability, absent a recent medical report, based on earlier medical records and claimant's testimony about his "continuing and deteriorating physical condition" and inability to work).

Additionally, the Commission has inferred ongoing disability from the medical records as a whole, despite no recent medical treatment or reports. *See Switzer v. 92 S. Main LLC*, JCN VA00001618629, slip op. at 6-7 (Va. Workers Comp. Comm'n Jan. 21, 2021). In *Switzer v. 92 South Main LLC*, the claimant's last medical report, dated around a year before the deputy commissioner's opinion, put the claimant on no work duty status, recommended surgery, and noted how the claimant's surgery was delayed due to workers' compensation issues. *Id.* The deputy commissioner's opinion denied the claimant temporary total disability benefits because the claimant did not pursue follow-up treatment in the year following his last medical report. *Id.* at 5. Reversing this decision on review, the Commission stated that "[t]he employer cannot 'deny responsibility for treatment of the work injury and then assert the absence of interim medical reports as a basis for denying continuing disability that may be reasonably inferred from the medical records as a whole.'" *Id.* at 7 (quoting *Crawford v. Contemporary Nursing Sols.*, JCN 240-56-70, slip op. at 9 (Va. Workers Comp. Comm'n July 18, 2011)). The Commission reasonably inferred claimant's ongoing disability from the last medical report that detailed claimant's upcoming surgery and claimant's subsequent testimony about his "efforts to secure medical treatment after the defendants' denial of coverage." *Id.*

While disability has been inferred from the extent of a claimant's injuries, the Commission has also found it unreasonable to infer long-term disability from a claimant's

non-complex, non-severe injuries. *See Zelaya v. MO GC, Inc.*, JCN VA02000005314, slip op. at 4 (Va. Workers Comp. Comm'n Dec. 1, 2011) ("It simply cannot be inferred from [claimant's broken arm] injury that the claimant would have been totally disabled for more than six weeks following his surgery."). *Compare Zelaya*, JCN VA02000005314, *with Switzer*, JCN VA00001618629, slip op. at 3, 7 (inferring disability from the medical records recommending surgical treatment for claimant's SLAP tear due to electrocution).

Fogel did not prove his disability beyond May 2, 2020, when he did not submit any evidence or testimony detailing his ongoing injuries after the April 2, 2020 report, even though the record remained open until April 26, 2021. Fogel last testified about his injuries at a hearing in 2019. Unlike the claimants in *Smith* and *Switzer*, Fogel provided no testimony about his ongoing symptoms, pursuit of medical treatment, or workers' compensation issues preventing his medical treatment during the period for which he claims ongoing disability. Instead, the record is silent as to what Fogel experienced beyond May 2, 2020, after he failed to follow up with Dr. Vincent.[18]

Further, this is not a case in which the Commission could infer Fogel's ongoing disability from the medical records as a whole. The April 2, 2020 report detailed Fogel's improvement regarding his rib fractures and only stated Fogel should see a thoracic surgeon "*[i]f* he continues to have pain." (Emphasis added). While Dr. Vincent recommended injections for pain management, he did not state further treatment was necessary for Fogel's recovery. Unlike the claimant in *Switzer*, Fogel was not awaiting surgery. Additionally, the April 2, 2020 report does not state Fogel's no work duty status was open-ended. Dr. Vincent specifically indicated that

---

[18] We emphasize that Fogel did not need to submit contemporaneous medical records to prove his ongoing disability. Rather, Fogel could have submitted testimony detailing his ongoing injuries or difficulties obtaining further medical treatment because of workers' compensation issues.

"[t]hese limitations should continue until the patient is re-assessed at his next appointment in one month." And while the April 2, 2020 report documents Fogel's unresolved diagnoses, it does not support an inference that Fogel's injuries are so severe as to require surgery or incapacitate him for over a year beyond his last documented medical appointment.

Because Fogel did not prove his ongoing disability beyond May 2, 2020, when he failed to submit additional evidence or testimony about his injuries and the Commission could not infer ongoing disability from the medical records as a whole, the Commission erred.

CONCLUSION

The Commission did not err in determining that Fogel suffered compensable injuries to his neck, left shoulder, and left arm in the work accident. However, the Commission erred when it inferred Fogel's ongoing disability beyond May 2, 2020. Accordingly, the Commission's decision is affirmed in part, reversed in part, and remanded for further actions by the Commission consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*